Paul DURHAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–04–175 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Dec. 1, 2004.

Decided Dec. 29, 2004.

Bill Burnett, Coldspring, for appellant.

Clyde M. Herrington, Dist. Atty., J. Dawn Armstrong, Lufkin, for state.

Before McKEITHEN, C.J., BURGESS, and GAULTNEY, JJ.

## OPINION

DON BURGESS, Justice.

A jury found Paul Durham guilty of aggravated sexual assault of a child and assessed punishment at sixty years' confinement in the Texas Department of Criminal Justice, Institutional Division, and assessed a fine of $5000. *See* TEX. PEN.CODE ANN. § 22.021(a) (Vernon Supp. 2005). Durham appeals.

In a sole appellate issue, Durham maintains the trial court committed reversible error by denying his requested "no adverse inference" jury instruction regarding Durham's failure to testify at the punishment phase of trial. During the guilt/innocence phase, the "no adverse inference" instruction was not given because Durham testified.

The State maintains Durham failed to preserve error on this issue because: (1) defense counsel stated he had no objection to the charge; (2) defense's counsel's statements were ambiguous about his request; he neither used the term "no adverse inference," nor explained the request clearly; (3) defense counsel failed to submit his request in writing as required by article 36.14 of the Code of Criminal Pro-

cedure;[1] and (4) defense counsel failed to explain to the judge that appellant had a separate right to not testify during the punishment phase, even if he had testified during the guilt/innocence phase.

 It is axiomatic that a criminal defendant cannot be compelled to be a witness against himself. U.S. CONST. amend. V, cl. 3. A defendant's right not to testify continues beyond conviction until after a defendant has been sentenced. *Beathard v. State,* 767 S.W.2d 423, 432 (Tex.Crim.App.1989); *Brown v. State,* 617 S.W.2d 234, 237 (Tex.Crim.App.1981). Further, a defendant has a right to a no-adverse-inference instruction, which concerns the fact a defendant elects not to testify, at the punishment stage of a trial. *White v. State,* 779 S.W.2d 809, 828 (Tex. Crim.App.1989); *Beathard,* 767 S.W.2d at 432; *Brown,* 617 S.W.2d at 238. The failure of the trial court to include the instruction upon proper request is error. *White v. State,* 779 S.W.2d at 828.

 Next, we determine whether appellant objected to the failure to include a "no-adverse-influence" instruction or made a proper request to add such instruction. Prior to the submission of the charge to the jury, the following exchange between the trial judge and counsel occurred:

THE COURT: Counsel, I have presented to you what I propose to be the charge of the Court. Are there any objections, requested instructions, on behalf of the State?

[STATE]: None, Your Honor.

THE COURT: What says the Defendant?

[DEFENSE COUNSEL]: Your Honor, I haven't had a chance to go through the whole thing, but I know one aspect is, is my client did not testify in the punishment phase. And there's a paragraph similar to the one in the guilt/innocence in which under applicable law, or I should say—

THE COURT: Where are you talking about?

[DEFENSE COUNSEL]: That a defendant may testify on his behalf if he elects to do so, but that's a privilege. If he elects not to testify that fact or circumstance can't be used against him here, and it should not be considered in deliberations or taken into consideration.

THE COURT: Where are you reading that?

[DEFENSE COUNSEL]: That is from a previous—another charge that I have.

THE COURT: Okay. Read my charge.[2]

1. Article 36.14, "Charge of court," provides, in part:

 Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection.... The requirement that the objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and ob-

 jections presented to the charge and any amendment or modification thereof. In no event shall it be necessary for the defendant to except to the action of the court in overruling defendant's exceptions or objections to the charge.

 TEX.CRIM. PROC.CODE ANN. § 36.14 (Vernon Supp.2005).

2. The pertinent part of the court's punishment charge states:

 You are further charged that in fixing the defendant's punishment, you may take into consideration all of the evidence submitted to you in the full trial of this case, that is, all of the evidence submitted to you in the

[DEFENSE COUNSEL]: Oh.

THE COURT: We're not doing somebody else's charge.

[DEFENSE COUNSEL]: I understand.

THE COURT: This is one. And I have not found that instruction in here.

[DEFENSE COUNSEL]: And I'm requesting that instruction. I guess, is what I—

THE COURT: He testified in the previous part, and so you're entitled to that instruction in this charge.

[DEFENSE COUNSEL]: All right.

THE COURT: So if that's a requested—

[DEFENSE COUNSEL]: That's a requested instruction.

THE COURT: Okay. That will be denied. All right.

[DEFENSE COUNSEL]: That's all I have, Your Honor, to submit. I don't have any objections.

◼ Considering the above exchange, we conclude the trial court understood defense counsel was requesting an instruction that the jury could draw no adverse inference from appellant's failure to testify in the punishment phase. *See Francis v. State*, 36 S.W.3d 121, 123 (Tex.Crim.App. 2000). The Court of Criminal Appeals held that the only requirement for preserving error is for the requested instruction be in writing or dictated to the court reporter. *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex.Crim.App.1996). Here, defense counsel read the following language from a previous charge into the record: "That a defendant may testify on his be-

half if he elects to do so, but that's a privilege. If he elects not to testify that fact or circumstance can't be used against him here, and it should not be considered in deliberations or taken into consideration." We find that appellant sufficiently requested a "no adverse inference" instruction, that the trial court erred in failing to grant the instruction, and that the error has been preserved for our review.

◼ In cases of constitutional error subject to harmless error review, a reviewing court applies Texas Rule of Appellate Procedure 44.2(a), which requires us to reverse a judgment of conviction or punishment unless we determine, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. *See* Tex.R.App. P. 44.2(a); *see Fulbright v. State*, 41 S.W.3d 228, 235 (Tex.App.-Fort Worth 2001, pet. ref'd). A constitutional error within the meaning of Rule 44.2(a) is an error that directly offends the United States or Texas constitution, without regard to any applicable statute or rule. *Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.-Austin 1999, pet. ref'd). The failure to give a properly requested "no adverse inference" instruction is an error directly offending the constitutional Fifth Amendment right against self-incrimination. *See White*, 779 S.W.2d at 828; *Beathard*, 767 S.W.2d at 432; *Brown*, 617 S.W.2d at 238.

The Fifth Amendment attempts to secure the right of a criminal defendant to elect not to testify and to prohibit the State from exacting a price for exercising that right. *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965). The omission of a no-

---

trial of the first part of this case wherein you were called upon to determine the guilt or innocence of the defendant, and all of the evidence, if any, admitted before you in the second part of the trial wherein you were called upon to fix the defendant's pun-

ishment; and you will be bound by the charges of the Court covering both the first and second parts of this trial in determining what punishment shall be given to the defendant. References

adverse-inference punishment instruction attaches such a price to the exercise of the privilege because "the members of a jury, unless instructed otherwise, may well draw adverse inferences from a defendant's silence." *Carter v. Kentucky*, 450 U.S. 288, 301, 101 S.Ct. 1112, 1119, 67 L.Ed.2d 241 (1981). The *Carter* Court made clear the importance of a defendant's constitutional right to remain silent:

> We have repeatedly recognized that "instructing a jury in the basic constitutional principles that govern the administration of criminal justice," is often necessary. Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law. Such instructions are perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination, since "[t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are ... guilty of crime...." And, as the Court has stated, "we have not yet attained that certitude about the human mind which would justify us in ... a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court...."

A trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction—and he has an affirmative constitutional obligation to use that tool when a defendant seeks its employment. No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum.

*Id.*, 450 U.S. at 302–03, 101 S.Ct. at 1120 (citations and footnotes omitted).

While the State argues that no harm resulted from the trial court's omission of the requested charge, we cannot agree. At the punishment phase, the State introduced evidence about flaws in the probation system, including the case loads of probation officers, the limited amount of time a probation officer spends monitoring an offender, the unavailability of electric monitoring, and the possibilities that parole violators will not be incarcerated. James Webb testified on appellant's behalf at the punishment phase. Webb stated appellant had complied with the Court's restriction while awaiting trial and that appellant's family supported him and would provide assistance if appellant received a probated sentence. When asked whether appellant would follow the rules and be responsible if the jury gave him probation, Webb answered affirmatively. As appellant testified in the guilt/innocence phase, the jury reasonably could have expected to hear similar promises of compliance directly from appellant. Further, appellant was sentenced to a term of sixty years' imprisonment, while the available punishment ranged from terms of five years to ninety-nine years.

With such a punishment range available, coupled with the punishment phase evidence and in the absence of prior offense evidence, we cannot conclude beyond a reasonable doubt that appellant's failure to receive a "no adverse inference" instruction did not contribute to the sentence he received. Accordingly, we sustain appellant's issue. We reverse the trial court's judgment as to appellant's punishment and remand this cause to the trial court for a new punishment hearing only.

REVERSED AND REMANDED.

GAULTNEY, Justice, dissenting.

DAVID GAULTNEY, Justice, dissenting.

I respectfully dissent. In this case, the trial court's failure to give the "no adverse inference" instruction to the jury was harmless. *See Beathard v. State,* 767 S.W.2d 423, 432–33 (Tex.Crim.App.1989). There is a natural tendency to assume that the defendant's decision not to testify stems from his having something to hide. *Id.* at 432. But that is not a concern here. Durham had already testified during the guilt/innocence phase and related his version of the facts.

The State's evidence during punishment consisted of a probation department employee's testimony concerning the possibility of counseling for sex offenders in prison. This was not a factual assertion that Durham needed to deny or counter. The jury had found him guilty. The range of punishment for the offense was five to ninety-nine years; the jury did not assess the maximum. *See* TEX. PEN.CODE ANN. § 22.021(e) (Vernon Supp.2005); TEX. PEN. CODE ANN. § 12.32 (Vernon 2003). The jury heard evidence Durham had never before been convicted of a felony. His friend made a plea for probation and testified he would help Durham follow probation rules. And during voir dire, the State explained a defendant's Fifth Amendment right not to testify and remain silent. Here, there were no factual assertions in the punishment phase that the jury would have expected Durham to counter. As in *Beathard v. State,* 767 S.W.2d 423 (Tex. Crim.App.1989), the error in failing to give a "no adverse inference" instruction to the jury was harmless under these circumstances.